# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

ERIC PACE,

    Plaintiff,

v.

TOWN OF PAONIA, COLORADO,

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Eric Pace, by and through his attorneys, Wegener, Scarborough, Younge & Hockensmith, LLP, and for his Complaint against Defendant Town of Paonia, Colorado, states as follows:

### I. JURISDICTION AND PARTIES

1. Plaintiff Eric Pace (hereinafter "Mr. Pace") is an individual residing at 3244 B 1/2 Road, Grand Junction, Mesa County, Colorado 81503.

2. Defendant the Town of Paonia (hereinafter "Paonia") is a Colorado Town, with its principal office address located at 214 Grand Avenue, Paonia, Colorado 81428; Defendant can be served at the same location.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4. The Court has personal and subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

5. On September 10, 2018, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

6. Pursuant to 29 C.F.R. § 1601.28(1), "[w]hen a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge with the Commission."

7. From December 20, 2018, when Plaintiff filed its response to Defendant's EEOC position Statement, until January 8, 2020, when Plaintiff inquired, via email to the EEOC's Denver, Colorado Field Office, as to the lack of action on the part of the EEOC, Plaintiff received no correspondence from the EEOC and no notifications were issued on the EEOC "Public Portal" at https://publicportal.eeoc.gov/Portal/Login.aspx. At the time of Plaintiff's inquiry, four hundred eighty-six (486) days had passed from the filling of the charge with the EEOC.

8. In response to Plaintiff's January 8, 2020 email, Mr. Justin C. Moore with the Denver Field Office replied, "I should have a preliminary determination for you within the next three weeks." *See* Email Thread Between Plaintiff's Counsel and Justin Moore, attached hereto as Exhibit 1.

9. On March 2, 2020, a file of unknown type, titled "Request for NRTS" was placed in the EEOC Public Portal, but the file cannot be opened. *See* Screenshot of EEOC Public Portal for Charge No. 541-2018-03254, attached hereto as Exhibit 2.

10. Counsel for Plaintiff has since made several attempts by telephone and email to reach representatives at the EEOC Denver Field Office and the Office of the Colorado Attorney General regarding the status of a Notice of Right to Sue.

11. Pursuant to 42 U.S.C. § 2000e-5(f)(1) and 29 C.F.R. § 1601.28(e), Plaintiff, who is the "aggrieved party," must bring a civil action with ninety (90) days of the EEOC's issuance of authorization to do so.

12. It has now been seventy four (74) days since the "Request for NRTS" was placed in the EEOC Public Portal, and because the potential exists that the ninety-day window for filing this action may expire before he receives a physical copy of a Notice of Right to Sue from the EEOC, Mr. Pace is now filing this action out of an abundance of caution.

13. Defendant will not be prejudiced by this Court exercising jurisdiction over this matter prior to Plaintiff receiving a Notice of Right to Sue as Defendant is aware of the EEOC charge against it and has responded to the charge.

14. Enforcement of the provisions of Title I of the Americans with Disabilities Act is governed by the enforcement provisions of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging

discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.")

15. In accordance with judicial decisions from the federal circuits, the filing of this action, at this time, is proper under the circumstances. *See Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990) ("A Title VII complainant may file an action prior to receiving her right to sue letter, provided there is not evidence showing that the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing."); *see also Wilson v. Peña*, 79 F.3d 154, 167–68 (D.C. Cir. 1996) (concluding that a Title VII claimant was entitled to file suit to challenge the correctness of an agency's computation of a backpay award once the EEOC failed to act on the claimant's petition for enforcement within 180 days); *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1170 (D. Nev. 2009) (denying a defendant's assertion that it was prejudiced where the plaintiff filed a complaint one month before being entitled to a right-to-sue-letter).

## II. GENERAL ALLEGATIONS

16. On approximately April 16, 2007 Mr. Pace was hired by Paonia as a Sanitation Technician.

17. During the first eight years of his employment with Paonia, Mr. Pace was praised by his supervisors and other employees for his work ethic and job performance.

18. As a Sanitation Technician, Mr. Pace's job responsibilities included driving garbage collection trucks, snowplows, and other heavy equipment, loading garbage into the back of garbage collection trucks, clearing snow manually and using snowplows, and cleaning the shop. Depending on the day, Mr. Pace would perform any or all of these duties.

19. On November 15, 2015, Mr. Pace was injured when he lifted a particularly heavy garbage can into the back of a garbage collection truck.

20. When he lifted the can, Mr. Pace felt a tearing or breaking in his left shoulder accompanied by excruciating pain and an inability to move his left arm or his neck.

21. That day, Mr. Pace visited the Emergency Department at Delta County Memorial Hospital, where he was diagnosed with an acute trapezius strain and brachial plexus paresthesias, which consist of burning-numbness sensations and are caused by the proximity of the injury to the spinal cord.

22. Mr. Pace was discharged from the hospital with instructions from medical professionals, which included resting and avoiding the use of his shoulder muscles.  The hospital notified Paonia of Mr. Pace's work limitations.

23. Mr. Pace returned to work the next day and sought the advice of the Town Administrator, Ms. Jane Berry, as to how to pursue a worker's compensation claim.

24. Instead of immediately assisting Mr. Pace, Ms. Berry was indifferent to his needs and insulted him for asking for help with the matter.  Ms. Berry then assigned Mr. Pace to his regular duties for the day, collecting garbage and cleaning the shop.

25. One or two days later, Ms. Berry provided Mr. Pace with the information for Paonia's worker's compensation physician's office and scheduled his first evaluation.

26. Mr. Pace then filed a claim for benefits pursuant to the Colorado Worker's Compensation Act ("CWCA"), Colo. Rev. Stat. § 8-40-101, *et seq.*

27.     On December 2, 2015, Mr. Pace was placed on work restrictions, limiting him to lifting, carrying, pushing, or pulling no more than twenty pounds and limited overhead reaching with his left arm.

28.     Thereafter, and after each subsequent physical evaluation he underwent, Mr. Pace notified his supervisors and Ms. Berry of his work restrictions, provided documentation from his physician, and requested reasonable accommodations in order to comply with those restrictions, such as being allowed to drive the garbage collection trucks and other heavy equipment as he was trained and licensed to do so .

29.     Nevertheless, Ms. Berry and department supervisors continued to assign Mr. Pace duties that exceeded his physician-ordered restrictions, including lifting garbage containers, plows, chains, and other equipment and materials that weighed far more than twenty pounds.

30.     On Friday, February 5, 2016, while still under restrictions from lifting more than twenty pounds, Mr. Pace was injured again when a dumpster he and a co-worker were pushing fell and struck his right shoulder blade.

31.     Emergency doctors who evaluated this second injury placed Mr. Pace on new work restrictions for the following week, this time limiting the weight he could lift, carry, push, or pull to ten (10) pounds.

32.     Mr. Pace then filed a second claim for benefits under the CWCA.

33.     From that time on, Paonia continued to assign Mr. Pace duties that exceeded his work restrictions and ignored his requests for reasonable accommodation.  Mr. Berry and Mr. Pace's supervisors also insulted and ridiculed him on numerous occasions, questioned the "slow"

pace of his recovery, and consistently assigned heavy labor, even though he was trained and licensed to drive garbage collection trucks and other equipment.

34. Ultimately, Mr. Pace required two shoulder surgeries and ongoing physical therapy, and by December of 2016, his physicians determined that his physical impairments were likely permanent and that he should be permanently restricted from lifting, carrying, pushing, or pulling more than thirty pounds.

35. After Mr. Pace's second injury, in addition to the conduct described above, Paonia began reducing his hours and altering his timecards so that his vacation, personal, sick, and compensation time were exhausted.

36. From January 2, 2017 until his December 31, 2017 termination, Mr. Pace was given only forty-nine hours of work.

37. In the fall of 2017, Mr. Pace filed a formal grievance with Paonia's Town Board of Trustees (Hereinafter the "Board"), alleging retaliation for his filing of worker's compensation claims.

38. Without investigating those allegations or providing Mr. Pace with an opportunity to be heard, the Board dismissed his complaints.

39. Thereafter, Mr. Pace's employment with Paonia was terminated.

40. Mr. Pace appealed the termination with the Board, but the decision was upheld. Mr. Pace's last day of employment with Paonia was December 30, 2017.

### III. CLAIMS FOR RELIEF

#### First Cause of Action

**(Discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*)**

41. Mr. Pace incorporates the allegations contained in Paragraphs 1 through 40 as being fully set forth herein.

42. Paonia is a covered employer as defined by 42 U.S.C. § 12111(5)(a) as Paonia is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." For ADA purposes, "[p]erson . . . shall have the same meaning given those terms in section 701 of the Civil Rights Act of 1964 (42 U.S.C. 2000e)." *See* 29 C.F.R. § 1630.2(b). Under 42 U.S.C. § 2000e, the term "person" includes governments and governmental agencies.

43. Mr. Pace has a permanent disability within the meaning of 42 U.S.C. § 12102 because the injuries to his shoulders caused permanent physical impairments that limit his ability to lift, carry, push, or pull more than thirty pounds, and because Mr. Pace has a record of those impairments from numerous worker's compensation evaluations performed by physicians over the course of more than two years.

44. Mr. Pace is a qualified individual within the meaning of 42 U.S.C. § 12111 because he can, with or without accommodation, perform the essential functions of driving garbage collection trucks, snowplows, and other heavy equipment, and sweeping, washing, wiping, and similar cleaning functions.

45. Because of Mr. Pace's disability, he was discriminated against by Paonia within the meaning of 42 U.S.C. § 12112(a) because he was insulted and ridiculed for his inability to fully recover from the injuries he sustained at work, he was forced to perform heavy labor that exceeded physician-ordered work restrictions, the hours he was given to work were substantially

reduced, his vacation time, sick leave, and other compensatory pay was exhausted without his consent, and he was ultimately terminated from his employment.

46. As a result of Paonia's discrimination, Mr. Pace has suffered, and continues to suffer financial damages in amounts to be proven at trial.

47. Pursuant to 42 U.S.C. § 12205, Mr. Pace is also entitled to recover reasonable attorney's fees, including litigation expenses and costs.

**Second Cause of Action**

**(Failure to Accommodate under the Americans with Disabilities Act)**

48. Mr. Pace incorporates the allegations contained in Paragraphs 1 through 47 as being fully set forth herein.

49. Paonia is a covered employer as defined by 42 U.S.C. § 12111(5)(a) as Paonia is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." For ADA purposes, "[p]erson . . . shall have the same meaning given those terms in section 701 of the Civil Rights Act of 1964 (42 U.S.C. 2000e)." *See* 29 C.F.R. § 1630.2(b). Under 42 U.S.C. § 2000e, the term "person" includes governments and governmental agencies.

50. Mr. Pace has a permanent disability within the meaning of 42 U.S.C. § 12102 because the injuries to his shoulders caused permanent physical impairments that limit his ability to lift, carry, push, or pull more than thirty pounds, and because Mr. Pace has a record of those impairments from numerous worker's compensation evaluations performed by physicians over the course of more than two years.

51. Mr. Pace is a qualified individual within the meaning of 42 U.S.C. § 12111 because he can, with or without accommodation, perform the essential functions of driving garbage collection trucks, snowplows, and other heavy equipment, and sweeping, washing, wiping, and similar cleaning functions.

52. Paonia discriminated against Mr. Pace within the meaning of 42 U.S.C. § 12112(b)(5)(A) by not making reasonable accommodations to Mr. Pace's known disability where Mr. Pace was otherwise qualified to drive garbage collection trucks, snowplows, and other heavy equipment, and sweep, wash, wipe, and perform similar cleaning functions.

53. As a result of Paonia's refusal to make reasonable accommodations, Paonia terminated Mr. Pace's employment, causing him to suffer damages in amounts to be proven at trial.

54. Pursuant to 42 U.S.C. § 12205, Mr. Pace is also entitled to recover reasonable attorney's fees, including litigation expenses and costs.

### Third Cause of Action

### (Retaliation under the Americans with Disabilities Act)

55. Mr. Pace incorporates the allegations contained in Paragraphs 1 through 54 as being fully set forth herein.

56. Paonia is a covered employer as defined by 42 U.S.C. § 12111(5)(a) as Paonia is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." For ADA purposes, "[p]erson . . . shall have the same meaning given those terms in section 701

of the Civil Rights Act of 1964 (42 U.S.C. 2000e)." *See* 29 C.F.R. § 1630.2(b). Under 42 U.S.C. § 2000e, the term "person" includes governments and governmental agencies.

57. Each of the two times that Mr. Pace was injured on the job, he engaged in the protected activities of applying for benefits under the CWCA and seeking reasonable accommodations for his disability.

58. Each time after he applied for benefits under the CWCA and sought reasonable accommodations for his impairments, Mr. Pace was subjected to insults and ridicule and was forced to perform heavy labor that exceeded his physician-ordered restrictions.

59. After Mr. Pace's second injury, Paonia began reducing his hours and altering his timecards so that his vacation, personal, sick, and compensation time were exhausted.

60. Ultimately, Mr. Pace's employment with Paonia was terminated because he applied for benefits under the CWCA and because he requested reasonable accommodations for his permanent disability.

61. Paonia's conduct in subjecting Mr. Pace to ongoing insults and ridicule, and assigning him duties that exceeded his physician-ordered restrictions, were causally connected to his applying for benefits under the CWCA and requesting reasonable accommodations for his disability because Paonia's conduct directly followed Mr. Pace's applying for benefits and requesting accommodation.

62. As a result of Paonia's retaliation for Mr. Pace's participation in the protected activities of applying for benefits under the CWCA and requesting reasonable accommodations for his permanent disability, Mr. Pace has been damaged in amounts to be proven at trial.

63. Pursuant to 42 U.S.C. § 12205, Mr. Pace is also entitled to recover reasonable attorney's fees, including litigation expenses and costs.

## Fourth Cause of Action

**(Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794)**

64. Mr. Pace incorporates the allegations contained in Paragraphs 1 through 63 as being fully set forth herein.

65. Upon information and belief, at all times relevant hereto, Paonia is/was an entity that received federal grants and is therefore a covered entity for the purposes of 29 U.S.C. § 794(a). *See* Town of Paonia Financial Statements December 31, 2017, attached hereto as Exhibit 3, at p.40.

66. Mr. Pace has a permanent disability within the meaning of 42 U.S.C. § 12102 because the injuries to his shoulders caused permanent physical impairments that limit his ability to lift, carry, push, or pull more than thirty pounds, and because Mr. Pace has a record of those impairments from numerous worker's compensation evaluations performed by physicians over the course of more than two years.

67. Mr. Pace was otherwise qualified to drive garbage collection trucks, snowplows, and other heavy equipment, and sweep, wash, wipe, and perform similar cleaning functions.

68. Instead of reasonably accommodating Mr. Pace's limitations due to his physical impairments, Paonia terminated Mr. Pace solely by reason of those impairments.

69. As a result of discrimination in violation of the Rehabilitation Act, Mr. Pace has been damaged in amounts to be proven at trial.

## IV.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a final judgment:

### I.

Awarding Mr. Pace such damages as he has sustained as a result of Paonia's acts of discrimination and retaliation under the Americans with Disabilities Act, its failure to provide Mr. Pace with reasonable accommodations, and its violation of the Rehabilitation Act, including economic damages for his past and future loss of wages and noneconomic damages resulting from the discrimination he endured.

### II.

Awarding Mr. Pace his reasonable attorney fees, costs, court fees, pre-judgment and post-judgment interest, and expert witness fees, as allowed by law, and any and all other costs and fees allowed by law.

### III.

Granting other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted this 15th day of May 2020.

> */s/ Benjamin M. Wegener*
> Benjamin M. Wegener
> Wegener, Scarborough, Younge & Hockensmith, LLP
> 743 Horizon Court, Suite 200
> Grand Junction, CO 81506
> Telephone: (970) 242-2645
> FAX: (970) 241-5719
> Email: ben@wegscar.com
> ***Attorney for Plaintiff Eric Pace***