**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-CV-01389-LTB-GPG

ERIC PACE,
Plaintiff,

v.

TOWN OF PAONIA, COLORADO,
Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

The Town of Paonia (the "Town"), by and through its attorneys, Nathan Dumm & Mayer

P.C., hereby submits its Motion for Summary Judgment with supporting authority as follows:

**CONFERRAL**

In an attempt to narrow the potential issues in dispute, defense counsel conferred with

Plaintiff's counsel prior to the filing of this Motion, who advised the Motion is opposed.

**INTRODUCTION**

Plaintiff was employed by the Town as a manual laborer. After sustaining workers'

compensation injuries to both shoulders, Plaintiff was assessed with permanent physical

restrictions for his left shoulder on lifting, repetitive lifting, carrying, pushing, and pulling no

more than *five* pounds, and a similar twenty-pound restriction on his right shoulder. The Town

subsequently undertook an extensive investigation to determine whether Plaintiff could perform

his essential duties with reasonable accommodation. The Town ultimately determined that

Plaintiff's extreme physical restrictions could not be reasonably accommodated in his manual

laborer position, which was the only position available at that time, and thus terminated

Plaintiff's employment. Although Plaintiff alleges the termination of his employment was discriminatory and retaliatory, the reality is simply that Plaintiff could not perform the job duties of a manual laborer with a five-pound lifting restriction. For the reasons discussed in detail below, Plaintiff has failed to establish *prima facie* case for any of his ADA and Rehabilitation claims and the Town is entitled to summary judgment.

## STANDARD OF REVIEW

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005); Fed. R. Civ. P. 56. It is not a disfavored shortcut, but rather is an integral part of the rules. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish a genuine issue of material fact. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Vague, conclusory and self-serving statements do not create a genuine issue of material fact. *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000). "Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986).

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

*Plaintiff's History of Employment and Workers' Compensation Claims with the Town*

1. On or about April 16, 2007, Plaintiff was hired by the Town as a Sanitation Technician. **[Ex. A, Pace Depo. Ex. 8].**

---

[1] For purposes of this Motion only, the Town has accepted Plaintiff's supported factual statements, as opposed to conclusory and/or legal assertions, as true.

2.   In 2015, Plaintiff's job title became Public Works Laborer. **[Ex. A].**

3.   In November of 2015, Plaintiff sustained a left shoulder injury while lifting a trash can and filed a claim for workers' compensation benefits. **[Ex. B, Pace Depo Ex. 7; Ex. C, Eric Pace Depo. 17:9-13, 263:16-19].**

4.   On February 5, 2016, Plaintiff sustained a right shoulder injury while moving a dumpster and filed a second claim for workers' compensation benefits. **[Ex. C, 17:9-13, 94:17-21, 95:2-13.]**

5.   During the course of medical treatment that Plaintiff received for his injuries, including two surgeries, Plaintiff's workers' compensation physicians assessed him with varying temporary restrictions on lifting, repetitive lifting, carrying, pushing, pulling, and reaching overhead. **[Ex. B; Ex. C, 131:19-22].**

6.   Plaintiff never complained that he was being assigned duties allegedly in excess of his restrictions. **[Ex. C, 110:21-24; Ex. D, Loberg Depo. 44:4-6, 44:9-12].**

7.   Plaintiff also admits that other employees assisted him when he requested help. **[Ex. C, 82:22-25, 83:10-12, 114:14-18].**

8.   Plaintiff did not request any accommodations in writing to his supervisor, Travis Loberg. **[Ex. C, 109:18-110:13].**

9.   The only specific task Plaintiff verbally requested accommodation from Mr. Loberg was to be the person who drove the trash truck, rather than the person on the back lifting the trash cans. **[Ex. C, 288:7-289:4, 290:2-14].**

10. Plaintiff also did not complain to any supervisor that Mr. Loberg was not accommodating his restrictions. **[Ex. C, 110:21-24; Ex. D 44:9-12].**

11. On or about August 17, 2017, Plaintiff was evaluated by one of his workers' compensation physicians, who placed him at maximum medical improvement, and assessed him with permanent restrictions for his left shoulder on lifting, repetitive lifting, carrying, pushing, and pulling no more than five pounds. **[Ex. B, p.23; Ex. C, 134:14-18, 166:16-21, 172:23-173:2].**

12. On or about November 16, 2017, Plaintiff was evaluated by one of his workers' compensation physicians and assessed with a twenty pound restriction on his right shoulder. **[Ex. B, p.24; Ex. C, 164:14-17].**

13. There is no evidence that Plaintiff's five pound permanent restriction on his left shoulder and twenty pound restriction on his right shoulder were lifted or changed by any physician prior to December 31, 2017, the date Plaintiff's employment with the Town ended. **[Ex. C, 136:18-137:20, 160:7-161:21; Ex. E, Pace Depo. Ex. 10].**

*Termination of Plaintiff's Employment and Consideration of Proposed Accommodations*

14. Plaintiff wrote a letter, dated August 29, 2017, to the Town Administrator, Ken Knight, and Plaintiff's supervisor, Travis Loberg, inquiring about returning to work. **[Ex. F, Pace Depo. Ex. 13].**

15. On or about September 8, 2017, Mr. Knight emailed Plaintiff and proposed a meeting to discuss Plaintiff's work restrictions and ability to return to work. **[Ex. C, 196:3-7, 196:11-15; Ex. G, Pace Depo. Ex. 14].**

16. Plaintiff responded to Mr. Knight's email and indicated that if he was being asked to return to work and perform the same job duties he was doing before, his answer was no, because

he was not able to do those job duties with the restrictions for his injuries. **[Ex. C, 196:22-25, 197:14-19].**

17. On or about September 13, 2017, Mr. Knight emailed Plaintiff and explained that the job description for the Equipment Operator/Laborer position identifies the essential duties and physical requirements for the position. **[Ex. C, 198:16-23; Ex. H, Pace Depo. Ex. 15].**

18. Mr. Knight further indicated that it appeared Plaintiff's permanent restrictions prevented Plaintiff from performing the essential job duties required of the position. **[Ex. C, 198:24-199:2; Ex. H].**

19. However, Mr. Knight stated that he wanted to hear from Plaintiff, including Plaintiff's ideas for how he could perform his duties with his restrictions, prior to the Town making a final decision about his employment, and inquired if Plaintiff wanted to meet. **[Ex. C, 199:3-9; Ex. H].**

20. Plaintiff emailed Mr. Knight back, but did not end up meeting with Mr. Knight as proposed. **[Ex. C, 200:20-24; Ex. H].**

21. In a subsequent email to Mr. Knight, Plaintiff acknowledged Mr. Knight's comment that he did not see how Plaintiff could perform the job duties of the Equipment Operator/Laborer position given Plaintiff's restrictions was not an unreasonable opinion. **[Ex. C, 202:16-20; Ex. I, Pace Depo. Ex. 16].**

22. Plaintiff also reiterated that he could not perform the job for which he was employed before his injuries. **[Ex. C, 202:12-15; Ex. I].**

23. Additionally, in his email, Plaintiff indicated that it was possible he could operate equipment, but did not identify exactly what equipment he could operate or that he knew for certain he could operate it with his permanent restrictions. **[Ex. C, 202:21-203:10; Ex. I].**

24. Thereafter, Mr. Knight wrote a letter to Plaintiff dated October 30, 2017, noting that he was providing Plaintiff with a copy of the job description and requesting Plaintiff to identify the specific job duties Plaintiff could perform in light of his restrictions and any accommodations Plaintiff was requesting by November 9, 2017. **[Ex. C, 203:15-23, 204:23-205:4; Ex. J, Pace Depo. Ex. 17].**

25. Plaintiff responded to Mr. Knight with a letter dated November 6, 2017, wherein he discussed the job description of the Equipment Operator/Laborer position, but did not state that he could perform the job duties or specifically identify accommodations that would allow him to perform the job duties. **[Ex. C, 205:17-206:2, 207:1-3, 209:5-21; Ex. K, Pace Depo. Ex. 18].**

26. In a letter dated November 15, 2017, Mr. Knight wrote to Plaintiff confirming that the Equipment Operator/Laborer position was the only position the Town currently had open and explained that he could not come up with forty hours of work per week that Plaintiff could safely perform in that position. **[Ex. C, 214:13-16, 19-21, 215:3-23; Ex. L, Pace Depo. Ex. 20].**

27. Mr. Knight therefore notified Plaintiff that his effective date of termination would be November 30, 2017. **[Ex. C, 214:13-16, 19-21, 215:3-23; Ex. L].**

28. In response, Plaintiff sent Mr. Knight a letter dated November 28, 2017, admitting he could not perform some of the job duties of the Equipment Operator/Laborer position, but claiming that he could perform some of the duties with assistance or modification. **[Ex. C, 170:10-13, 183:21-184:1; Ex. M, Pace Depo. Ex. 12].**

29. In particular, Plaintiff noted in his letter that although he had a five pound restriction on his left shoulder, he could lift up to twenty pounds with his right shoulder, implying that he could do some tasks one-handed.  Plaintiff's mother, who assisted in the drafting of the exhibit, admitted, however, the information came solely from Plaintiff and his unsupported beliefs and no due diligence like was performed by the Town.  **[Ex. M; Ex. N, Charlene Pace Depo. 70:7-72:5].**

30. However, Plaintiff admits he is not aware of any medical provider that has provided him with clearance to perform tasks one-handed that would normally require two hands. **[Ex. C, 291:6-10].**

31. The accommodations Plaintiff proposed in his November 28, 2017 letter consisted of essentially removing all lifting and physical labor from the job duties of the Equipment Operator/Laborer position, providing an assistant to help with any manual labor tasks, and assigning him solely to the operation of vehicles with power steering which was sufficient to comply with the five pound permanent restriction. **[Ex. M].**

32. Mr. Knight emailed Plaintiff on November 29, 2017, noting that this was the first time Plaintiff had identified any accommodations Plaintiff was proposing, and that it was after Plaintiff had already been given the opportunity to provide such and was informed his employment was being terminated. **[Ex. C, 216:13-218:6; Ex. O, Pace Depo. Ex. 22].**

33. Despite noting that Plaintiff's response was not timely, Mr. Knight indicated that he would stop the termination process and consider the information Plaintiff had provided. **[Ex. C, 218:11-17; Ex. O].**

34. In evaluating whether Plaintiff could perform the essential duties of the position, Mr. Knight had Mr. Loberg perform research weighing various items, such as meter pit lids, and checking how many pounds of pressure it would take to turn the steering wheel of the trash truck. **[Ex. D, 23:1-24:2].**

35. Mr. Loberg also assisted Mr. Knight in determining the number of hours of work that Plaintiff could perform with his five pound lifting restriction, principally based on his research weighing certain items that would regularly be lifted by a Town employee. **[Ex. D, 53:1-54:2].**

36. Ultimately, Mr. Knight determined that Plaintiff could not perform the essential duties of the Equipment Operator/Laborer position with his restrictions and that the Town staff was too small to create another position for Plaintiff. **[Ex. P, Ferguson Depo. 16:19-17:4].**

37. In a letter dated December 11, 2017, Mr. Knight wrote to Plaintiff indicating that he had done further analysis in response to Plaintiff's November 28, 2017 letter, but had identified at best only 1,395 hours of work in a given year that Plaintiff could perform with accommodations, well below the 2,080 hours necessary for full-time employment with the Town. **[Ex. C, 219:5-21; Ex. Q, Pace Depo. Ex. 23].**

38. Mr. Knight noted that this disparity in hours would be even worse during the winter months when there were more activities requiring manual labor that Plaintiff could not perform with his restrictions. **[Ex. Q].**

39. Mr. Knight therefore informed Plaintiff that while his termination was previously going to be effective November 30, 2017, his termination date was being extended to December 31, 2017. **[Ex. C, 219:22-220:1; Ex. Q].**

40. There is no evidence that any person other than Mr. Knight made the final decision to terminate Plaintiff's employment. **[Ex. C, 257:10-20].**

41. Plaintiff admits that he does not think Mr. Knight discriminated against him because of a disability or his workers' compensation claims. **[Ex. C, 56:15-19].**

42. Plaintiff admits Mr. Knight never insulted or ridiculed him. **[Ex. C, 187:10-12].**

43. Plaintiff admits that Mr. Knight did not make any comments indicating he was taking action in retaliation for Plaintiff filing workers' compensation claims. **[Ex. C, 56:22-25].**

44. In fact, Plaintiff indicates that Mr. Knight was doing things favorable to Plaintiff, such as trying to help him with a clothing and boot allowance. **[Ex. C, 205:8-16].**

45. While Plaintiff claims Mr. Loberg made some off-hand jokes or comments about his recovery, Plaintiff did not submit any complaints to Mr. Knight alleging that Mr. Loberg spoke to him in a derogatory manner. **[Ex. C, 57:22-25].**

*Alleged Adverse Employment Actions*

46. Plaintiff alleges two adverse employment actions in this lawsuit – one, that there was a period of time he wanted to work before his employment was terminated but was not permitted to, and two, the termination of his employment. **[Ex. C, 191:13-20].**

47. With regards to the first alleged adverse employment action, Plaintiff claims that after his second workers' compensation injury occurred, the Town began reducing his hours and only gave him forty-nine hours of work from January 2, 2017 to December 31, 2017, when his employment was terminated. **[ECF 1, Compl., ¶¶ 35-36].**

48. However, Plaintiff could not identify the number of hours he believed he should have been permitted to work in 2017. **[Ex. C, 233:8-20].**

49. Furthermore, there is no evidence Plaintiff requested to return to work between January 1, 2017 and August 29, 2017. **[Ex. C, 193:14-21, 194:6-19].**

50. When asked during his deposition, Plaintiff could not identify exactly when he believed he was able to, or should have, returned to work between January 1, 2017 and December 31, 2017. **[Ex. C, 131:12-132:1, 133:8-11].**

51. Indeed, during parts of that time period, Plaintiff's workers' compensation physicians indicated that he was completely unable to work. [**Ex. C, 144:8-13].**

52. Plaintiff admitted that he was healing from two surgeries, and when questioned, did not disagree that it was more appropriate for him to be receiving workers' compensation benefits and not working. **[Ex. C, 131:19-132:5].**

*Equipment Operator/Laborer Position*

53. Plaintiff was performing the job duties of the Equipment Operator/Laborer position prior to the termination of his employment. **[Ex. C, 168:24-169:3, 215:8-14].**

54. Although Plaintiff takes issue with this because his job title was "Public Works Laborer," not "Equipment Operator/Laborer," Plaintiff admits that he has the knowledge and experience of an Equipment Operator. **[Ex. C, 148:4-7, 168:4-10; Ex. A; Ex. K].**

55. Regardless, the Equipment Operator/Laborer position was the only position the Town had open in the fall through December 2017, when Plaintiff's possible return to work was being considered. **[Ex. C, 167:23-169:3, 203:11-14, 215:3-7].**

56. Plaintiff claims that there may have been a Parks position open around that time performing mowing, maintenance, and sprinklers, but did not produce any document showing the existence of such a position. **[Ex. C, 185:3-19]**[2].

57. Plaintiff also claims that there may have been a building inspector position open, but admits he did not have the qualifications for that position nor did he request to be considered for that position. **[Ex. C 185:25-186:19]**.

58. Plaintiff admits that he cannot prove there was a vacant position beyond the Equipment Operator/Laborer position in September through December of 2017 that he could have performed. **[Ex. C, 186:20-187:3, 261:23-262:2]**.

59. Finally, even Plaintiff's own witness, William Brunner, had a complete lack of knowledge of anything that was pertinent to the case.  **[Ex. R, Brunner Depo. 43:19-45:5]**.

## LEGAL ARGUMENT

Plaintiff asserts three ADA claims: (1) discrimination in violation of the ADA; (2) failure to accommodate under the ADA; and (3) retaliation in violation of the ADA. Plaintiff also raises a fourth claim of violation of the Rehabilitation Act, which is analyzed under the same standards as the ADA. For the reasons discussed in detail below, Plaintiff cannot establish a prima facie case for any of his claims.

**A.     Plaintiff cannot establish his claims under the ADA.**

A prima facie case of termination in violation of the ADA requires an employee to show that he: (1) was disabled within the meaning of the ADA, (2) was qualified for the job, and (3)

---

[2] Plaintiff submitted no written discovery to the Town, so he never explored alternative positions. In any event, there were no positions available other than the Equipment Operator/Laborer position.

was discriminated against because of his disability. *Lincoln v. BNSF Ry. Corp.*, 900 F.3d 1166, 1192 (10th Cir. 2018). If met, the burden then switches to the employer to provide a legitimate, non-discriminatory reason for the employee's termination. *Id.* at 1193. Here, Plaintiff cannot establish a prima facie case for his three claims under the ADA.

    *i.   Plaintiff cannot establish a claim for discrimination under the ADA.*

For purposes of this Motion only, to avoid any possible dispute over material facts, the Town does not address whether Plaintiff has a disability as defined by the ADA.[3]

Even assuming Plaintiff is disabled under the ADA, Plaintiff cannot establish the second element of his ADA claims – that he was qualified for the job. The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Plaintiff could not perform the essential functions of the Equipment Operator/Laborer position with a permanent five pound restriction on lifting, carrying, pushing and pulling activities with his left shoulder and a twenty-pound restriction on his right shoulder. Plaintiff himself has repeatedly admitted that he could not perform his job duties with these restrictions.

---

[3] The Town reserves the right to raise this issue and dispute the existence of a disability at a later time.

**[Ex. C, 196:22-25, 197:14-19, 202:12-15; Ex. I].**   After Plaintiff was assessed with this permanent five pound restriction on lifting, carrying, pushing and pulling with his left shoulder, the Town carefully went hour by hour through the written job duties of the Equipment Operator/Laborer position to evaluate whether Plaintiff could meet the essential functions of the job. **[Ex. D, 53:1-54:2].** The Town's investigation revealed at best only 1,395 hours of work that Plaintiff could accomplish, with or without a reasonable accommodation, falling well short of the 2,080 hours of work necessary and required for the full-time Equipment Operator/Laborer position. **[Ex. C, 219:5-21; Ex. Q].** The Town also found that this disparity in hours would be even worse during the winter months when there were more activities requiring manual labor. Accordingly, the Town affirmed Plaintiff's termination of employment in December of 2017. **[Ex. Q].**

The Town's determination that Plaintiff could not meet the essential functions of the Equipment Operator/Laborer position was based upon the written job description and its extensive investigation into whether Plaintiff could perform the job duties specified therein. *See Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1222 (10th Cir. 2016) ("Evidence of whether a particular function is essential to a job includes…written job descriptions..."); *see also Gardenshire v. Manville*, 722 Fed. Appx. 835, 838-39 (10th Cir. 2018) (holding that employee could not meet essential functions of job requiring manually picking up and moving insulation materials, based upon restriction of lifting with his left arm). As the Tenth Circuit has consistently held, courts place "considerable weight on an employer's judgment concerning a particular job's 'essential' functions." *Kilcrease*, 828 F.3d at 1221-22 (internal citations omitted).

As a result of the Town's detailed investigation and Plaintiff's own admissions, it is clear Plaintiff cannot meet prong two of the required test and his claim fails.

With respect to the third element of Plaintiff's prima facie case, there is also no evidence that Plaintiff was discriminated against because of any supposed disability. There is no evidence Plaintiff was treated differently than other employees because of his shoulder restrictions, nor is there evidence of any accommodations given to non-disabled employees that were not afforded to Plaintiff.[4] Just the opposite, Plaintiff admits that Town Administrator Ken Knight, the individual actually responsible for the termination decision, never exhibited any discriminatory animus.

Simply put, Plaintiff cannot establish that he was treated differently on the basis of a disability. Rather, he simply could not perform the essential functions of a manual laborer; a job that certainly requires lifting in excess of five pounds.

   *ii.  Plaintiff cannot establish a claim for failure to accommodate under the ADA.*

As developed through discovery, Plaintiff's proposed accommodation - to not have to perform essentially any manual labor and to have someone else assist him with job duties that he can only partially perform – is not viable. **[Ex. M; Ex. C, 250:4-10].** Plaintiff essentially sought to be assigned solely to the operation of vehicles, and even then, indicated that he could only operate vehicles with sufficient power steering.

Under long-standing precedent, "an employer need not modify an essential function of an existing position to accommodate a disabled employee." *Adair v. City of Muskogee*, 823 F.3d

---

[4] Again, Plaintiff sought no written discovery and did not ask any deponents about accommodations afforded to other employees, whether disabled or not.

1297, 1311 (10th Cir. 2016) (internal citations omitted). Here, it is clear from the position's title alone, which includes "Laborer," that manual labor is an essential part of the position. The Town is not required to fundamentally alter the basic duties of the Equipment Operator/Laborer position in the manner proposed by Plaintiff. The Town's objective and detailed investigation determined that there was simply no reasonable accommodation it could have offered Plaintiff for the Equipment Operator/Laborer position given his extreme five pound lifting restriction, which rendered him incapable of performing almost any physical labor. The Town researched each job duty, analyzing their lifting and pulling requirements by weighing objects and checking pounds of pressure for turning items, to determine if they fell under Plaintiff's restrictions. Ultimately, the Town identified at best only 1,395 hours of work in a given year that Plaintiff could perform with accommodations, well below the 2,080 hours necessary for full-time employment with the Town. **[Ex. C, 219:5-21; Ex. Q].**

The Tenth Circuit has rejected the very type of accommodation sought by Plaintiff as unreasonable. For example, in *Adair,* 823 F.3d at 1311, the Tenth Circuit held that it was not required to restructure the position of a firefighter to accommodate the employee's lifting restriction. In *E.E.O.C. v. United Airlines*, 185 F.3d 874 (10th Cir. 1999), the Tenth Circuit likewise rejected the employee's proposed accommodation that she be relieved from all lifting requirements and have other employees perform all heavy lifting. The Tenth Circuit found such request to be an unreasonable accommodation since not only would it revise the essential functions of the job, but also create a burden on all other employees who worked with the employee. As affirmed by the Tenth Circuit, "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job." *Milton v. Scrivner, Inc.*,

53 F.3d 1118, 1124 (10th Cir. 1995). Other courts have also found requests for "light duty" to be unreasonable if at least some portion of the job routinely requires heavy lifting, such as that of a janitor. *See Hinson v. U.S.D. No. 500*, 187 F. Supp. 2d 1297 (D. Kan. 2002); *see also Barnard v. ADM Milling Co., Inc.*, 987 F. Supp. 1337 (D. Kan. 1997) (rejecting accommodation of lifting requirement when 100 pound lifting requirement found to be essential function of job).

Simply put, Plaintiff's proposed accommodation, removing essentially all elements of manual labor from a manual laborer position, is neither reasonable nor required under the ADA.[5]

iii.     *Plaintiff cannot establish his termination was based on retaliation.*

"To establish a prima facie case of retaliation, a plaintiff must show '(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action.'" *Kilcrease*, 828 F.3d at 1225 (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)).

Plaintiff alleges two adverse employment actions: one, that there was a period of time he wanted to work before his employment was terminated but was not permitted to, and two, that he

---

[5] Although he does not expressly state so, Plaintiff implies that as an alternative accommodation, he could have been reassigned to a Parks position or a building inspector position with the Town. However, Plaintiff could not offer any specifics about these positions, could not present the postings for either position, could not prove that either position actually was available between September and December of 2017, did not state he met the minimum qualifications for either position, and did not request to be considered for these positions. As the Tenth Circuit has made clear, the employee, not the employer, "bears the burden of identifying a specific vacant position to which he could have reasonably been reassigned." *Koessel v. Sublette Cnty. Sheriff's Dep't,* 717 F.3d 736, 745 (10th Cir. 2013). Here, the undisputed evidence establishes that the Equipment Operator/Laborer position was the only position the Town had available in the fall through December 2017, when Plaintiff's possible return to work was being considered. **[Ex. C, 167:23- 169:3, 203:11-14, 215:3-7].**

was terminated in retaliation for requesting accommodations for the physical restrictions he was assessed with during the workers' compensation process. With regards to the first alleged adverse employment action, Plaintiff claims that after his second workers' compensation injury occurred, the Town began reducing his hours and only gave him forty-nine hours of work from January 2, 2017 to December 31, 2017. [Compl., ¶¶ 35-36.] However, the undisputed evidence demonstrates that there is no retaliatory motive behind the number of hours Plaintiff worked in 2017 and his requests for physical restrictions related to the workers' compensation claims. Rather, Plaintiff's reduced hours in 2017 were the result of Plaintiff's physicians restricting Plaintiff from working and Plaintiff being off of work while healing from surgery. [**Ex. C, 131:19-132:5, 144:8-13.**]

  With respect to Plaintiff's second allegation of retaliation, the undisputed evidence demonstrates that there is no causal connection between any protected activity Plaintiff engaged in and the termination of his employment. Rather, the Town took multiple steps to determine if it could reasonably accommodate Plaintiff and ultimately determined it could not. Far from being retaliatory, the Town had to let Plaintiff go because he could not meet the essential functions of his job. Had the Town desired to retaliate against Plaintiff, it could have simply refused to undertake an investigation or to consider Plaintiff's untimely response to its original termination decision in November 2017. Instead, the Town placed Plaintiff's termination on hold while it reevaluated whether his proposed accommodations were reasonable. The evidence further demonstrates that the Town Administrator, Ken Knight, objectively considered the job requirements of the Equipment Operator/Laborer position and evaluated them in the context of Plaintiff's restrictions. Such conduct is devoid of any retaliatory motive or intent.

And even assuming Plaintiff has established a prima facie case of retaliation, there is no evidence that the Town's decision to terminate Plaintiff was pretextual. Evidence supporting a prima facie case does not entitle a plaintiff to proceed to trial under the ADA; rather, he must still "present[] evidence that the defendant's proffered reason for the employment decision was pretextual." *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000). This ordinarily means a plaintiff has demonstrable evidence of one of the following: (1) evidence that the defendant's justification for termination was false, (2) the defendant acted contrary to its own written policies, or (3) it treated the plaintiff differently from other similarly situated employees "who violated work rules of comparable seriousness." *Id.*

The Town's legitimate, non-retaliatory reason for Plaintiff's termination of employment was obviously not false. The Town's extensive investigation revealed that Plaintiff could not meet the essential functions of the Equipment Operator/Laborer position. Plaintiff can present no evidence that the Town acted contrary to its own written policies in reaching the employment decision of termination. Additionally, Plaintiff can present no evidence that other Town employees were treated differently on the basis of disability status. Indeed, Plaintiff did not even seek discovery of other terminations involving Town employees. The lack of evidence requires dismissal of Plaintiff's retaliation claim. *Kendrick*, 220 F.3d at 1235.

**B.     Plaintiff's Rehabilitation Act claim fails for the same reasons his ADA claims fail.**

In his fourth claim for relief, Plaintiff alleges that the Town violated the Rehabilitation Act for the same reasons it violated the ADA: termination and a failure to accommodate. Since Plaintiff was not capable of meeting the essential functions of his job and the accommodations requested of the Town under the ADA were unreasonable, as set forth in this Motion, he cannot

meet the prima facie elements of a claim under the Rehabilitation Act. *See Rivero v. Bd. of Regents*, 950 F.3d 754, 758 (10th Cir. 2020) (reading statutes *in pari materia*).

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Town respectfully requests summary judgment as to all of Plaintiff's claims, an award of its costs, and that this Court award such other and further relief as it deems appropriate.

Respectfully submitted this 20th day of July, 2021.

<div style="margin-left:40%">

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776
Phone Number: (303) 691-3737
Fax: (303) 757-5106
*Attorneys for Defendant*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of July, 2021, I electronically filed the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following at their e-mail addresses:.

Benjamin M. Wegener
Daniel J. Belcastro
Wegener, Scarborough, Younge & Hockensmith, LLP
743 Horizon Court, Suite 200
Grand Junction, CO 81506
Telephone: (970) 242-2645
FAX: (970) 241-5719
ben@wegscar.com
dan@wegscar.com
*Attorneys for Plaintiff Eric Pace*

<div align="right">

*s/Marni Nathan Kloster*
Marni Nathan Kloster
Nicholas C. Poppe
NATHAN DUMM & MAYER P.C.
7900 E. Union Avenue, Suite 600
Denver, CO  80237-2776

</div>