IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No.   20-cv-1389-LTB-GPG

ERIC PACE,

        Plaintiff,
v.

TOWN OF PAONIA, COLORADO,

        Defendant.

---

**ORDER**

---

This matter is before me on a Motion for Summary Judgment filed by Defendant Town of Paonia, Colorado (the "Town"). [**Doc #28**] Plaintiff Eric Pace has filed a Response to the Town's motion [Doc #33], and the Town has filed a Reply. [Doc #36] Oral argument would not materially assist me in my determination of this motion. After consideration of the parties' briefs, and for the reasons stated, I GRANT the Town's Motion for Summary Judgment.

        **I.**      **BACKGROUND**

Based on the briefing and evidence submitted, the following facts are undisputed unless otherwise noted. On or about April 16, 2007, Mr. Pace was hired by the Town as a Sanitation Technician. In 2015, his job title became Public Works Laborer. In November of 2015, Mr. Pace sustained a left shoulder injury while lifting a trash can and filed a claim for workers' compensation benefits. On February 5, 2016, Mr. Pace sustained a right shoulder injury while moving a dumpster and filed a second claim for workers' compensation benefits.

During the course of medical treatment that he received for his injuries, including two surgeries, Mr. Pace's workers' compensation physicians assessed him with varying temporary

restrictions on lifting, repetitive lifting, carrying, pushing, pulling, and reaching overhead. On or about August 17, 2017, Mr. Pace was evaluated by Dr. Kevin Pulsipher, one of his workers' compensation physicians, who placed Mr. Pace at maximum medical improvement ("MMI") and assessed him with permanent restrictions for his left shoulder on lifting, repetitive lifting, carrying, pushing, and pulling no more than five pounds. On or about November 16, 2017, Mr. Pace was evaluated by Dr. Pulsipher and assessed with a twenty-pound restriction on his right shoulder. There is no evidence that Mr. Pace's five-pound permanent restriction on his left shoulder and twenty-pound restriction on his right shoulder were lifted or changed by any physician prior to December 31, 2017, the date Mr. Pace's employment with the Town ended.

Mr. Pace wrote a letter dated August 29, 2017 to the Town Administrator, Ken Knight, and Mr. Pace's supervisor, Travis Loberg, inquiring about returning to work. On or about September 8, 2017, Mr. Knight emailed Mr. Pace and proposed a meeting to discuss his work restrictions and ability to return to work and Mr. Pace responded indicating that if he was being asked to return to work and perform the same job duties he was doing before, his answer was no because he was not able to do those job duties with the restrictions for his injuries.

On or about September 13, 2017, Mr. Knight emailed Mr. Pace and explained that the job description for the Equipment Operator/Laborer position identifies the essential duties and physical requirements for the position. Mr. Knight further indicated that it appeared Mr. Pace's permanent restrictions prevented him from performing the essential job duties required of the position. However, Mr. Knight stated that he wanted to hear from Mr. Pace, including his ideas for how he could perform his duties with his restrictions, prior to the Town making a final decision about his employment, and inquired if Mr. Pace wanted to meet. Mr. Pace emailed Mr.

Knight back, but did not end up meeting with Mr. Knight as proposed. In a subsequent email to Mr. Knight, Mr. Pace acknowledged Mr. Knight's comment that he did not see how Mr. Pace could perform the job duties of the Equipment Operator/Laborer position given his restrictions was not an unreasonable opinion. Mr. Pace also reiterated that he could not perform the job for which he was employed before his injuries and indicated that it was possible he could operate equipment, but did not identify exactly what equipment he could operate or that he knew for certain he could operate it with his permanent restrictions.

Thereafter, Mr. Knight wrote a letter to Mr. Pace dated October 30, 2017, noting that he was providing Mr. Pace with a copy of the job description and requesting that by November 9, 2017, Mr. Pace identify the specific job duties he could perform in light of his restrictions and any accommodations he was requesting. Mr. Pace responded to Mr. Knight with a letter dated November 6, 2017, wherein he discussed the job description of the Equipment Operator/Laborer position, but did not state that he could perform the job duties or specifically identify accommodations that would allow him to perform those duties.

In a letter dated November 15, 2017, Mr. Knight wrote to Mr. Pace confirming that the Equipment Operator/Laborer position was the only position the Town currently had open and explained that he could not come up with forty hours of work per week that Mr. Pace could safely perform in that position. Mr. Knight therefore notified Mr. Pace that his effective date of termination would be November 30, 2017. In response, Mr. Pace sent Mr. Knight a letter dated November 28, 2017, admitting he could not perform some of the job duties of the Equipment Operator/Laborer position, but claiming that he could perform some of the duties with assistance or modification. In particular, Mr. Pace noted in his letter that although he had a five-pound

3

restriction on his left shoulder, he could lift up to twenty pounds with his right shoulder. Mr. Pace admits he is not aware of any medical provider that has provided him with clearance to perform tasks one-handed that would normally require two hands. The accommodations Mr. Pace proposed in his November 28, 2017 letter consisted of essentially removing all lifting and physical labor from the job duties of the Equipment Operator/Laborer position, providing an assistant to help with any manual labor tasks, and assigning him solely to the operation of vehicles with power steering which was sufficient to comply with the five-pound permanent restriction.

      Mr. Knight emailed Mr. Pace on November 29, 2017, noting that this was the first time Mr. Pace had identified any proposed accommodations. Despite also noting that Mr. Pace's response was untimely, Mr. Knight indicated that he would stop the termination process and consider the information Mr. Pace had provided. In evaluating whether Mr. Pace could perform the essential duties of the position, Mr. Knight had Mr. Loberg perform research weighing various items, such as meter pit lids, and checking how many pounds of pressure it would take to turn the steering wheel of the trash truck. Mr. Loberg also assisted Mr. Knight in determining the number of hours of work that Mr. Pace could perform with his five-pound lifting restriction, principally based on his research weighing certain items that would regularly be lifted by a Town employee. Ultimately, Mr. Knight determined that Mr. Pace could not perform the essential duties of the Equipment Operator/Laborer position with his restrictions and that the Town staff was too small to create another position for him.

      In a letter dated December 11, 2017, Mr. Knight wrote to Mr. Pace indicating that he had done further analysis in response to Mr. Pace's November 28, 2017 letter, but had identified, at

best, only 1,395 hours of work in a given year that Mr. Pace could perform with accommodations, well below the 2,080 hours necessary for full-time employment with the Town. Mr. Knight noted that this disparity in hours would be even worse during the winter months when there were more activities requiring manual labor that Mr. Pace could not perform with his restrictions. Mr. Knight therefore informed Mr. Pace that while his termination was previously going to be effective November 30, 2017, his termination date was being extended to December 31, 2017.

There is no evidence that any person other than Mr. Knight made the final decision to terminate Mr. Pace's employment and Mr. Pace admits that he does not think Mr. Knight discriminated against him because of a disability or his workers' compensation claims. Mr. Pace also admits that Mr. Knight never insulted or ridiculed him and that Mr. Knight did not make any comments indicating he was taking action in retaliation for Mr. Pace filing workers' compensation claims.

Mr. Pace claims that after his second workers' compensation injury occurred, the Town began reducing his hours and only gave him 49 hours of work from January 2, 2017 to December 31, 2017. However, Mr. Pace could not identify the number of hours he believed he should have been permitted to work in 2017, and there is no evidence that Mr. Pace requested to return to work between January 1, 2017 and August 29, 2017. When asked during his deposition, Mr. Pace could not identify exactly when he believed he was able to, or should have, returned to work between January 1, 2017 and December 31, 2017. Indeed, during parts of that time period, Mr. Pace's workers' compensation physicians indicated that he was completely unable to work. Mr. Pace admitted that he was healing from two surgeries, and when questioned, did not disagree

that it was more appropriate for him to be receiving workers' compensation benefits and not working.

Mr. Pace was performing the job duties of the Equipment Operator/Laborer position prior to the termination of his employment. Although he takes issue with this because his job title was "Public Works Laborer," not "Equipment Operator/Laborer," Mr. Pace admits that he has the knowledge and experience of an Equipment Operator. Regardless, the Equipment Operator/Laborer position was the only position the Town had open in the fall through December 2017, when Mr. Pace's possible return to work was being considered. Mr. Pace claims that there may have been two other positions open around that time, but did not produce any document showing the existence of one of the positions and he admits he did not have the qualifications or request to be considered for the other. Mr. Pace admits that he cannot prove there was a vacant position beyond the Equipment Operator/Laborer position in September through December of 2017 that he could have performed.

On September 10, 2018, Mr. Pace filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On May 15, 2020, he filed the Complaint commencing this action [Doc #1], in which he asserts claims against the Town for discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (the "ADA"), as well as a claim for violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## II.     STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp*., 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate when the

moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). To meet this burden, a movant who does not bear the ultimate burden of persuasion at trial need not disprove a nonmovant's claims; rather, the movant must simply point "out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. If the movant meets this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). However, the Supreme Court has emphasized that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. When applying this standard, I must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

### III.    ANALYSIS

My review of this motion is guided by the three-step analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). In the context of a motion for summary judgment, a plaintiff must first raise a genuine issue of material fact as to each element of his prima facie case. *Id.* If the

7

plaintiff establishes a prima facie case, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. *Id*. Once the defendant articulates a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to show a genuine issue of material fact as to whether the defendant's proffered reason for the challenged action is pretextual, that is, unworthy of belief. *Id*.

  A. <u>Plaintiff's Claims for Discrimination Under the ADA and the Rehabilitation Act</u>

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual." *Mason v. Avaya Commc'ns, Inc*., 357 F.3d 1114, 1118 (10th Cir. 2004) (quoting 42 U.S.C. § 12112(a)). The Rehabilitation Act generally imposes the same obligations on employers as the ADA and its provisions and standards mirror those of the ADA. *Cummings v. Norton*, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch*., 565 F.3d 1232, 1245 (10th Cir. 2009). Thus, while my analysis below refers only to the ADA, it also applies to Mr. Pace's claim under the Rehabilitation Act. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) ("We apply the standards from the Americans with Disabilities Act in analyzing a Rehabilitation Act claim."). I also note that neither party here has argued that a different analysis is required.

To establish a prima facie case of discrimination under the ADA, an employee must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) he was discriminated against because of his disability. *Mason*, 357 F.3d at 1118.

   1. Whether Mr. Pace is Disabled

The Town assumes, for purposes of this motion only, that Mr. Pace has a disability as

8

defined by the ADA. I will therefore proceed to the question of whether Mr. Pace is "qualified" within the meaning of the ADA.

2. Whether Mr. Pace Is Qualified

Courts conduct a two-part analysis to determine whether an individual is qualified under the ADA: "First, the court determines whether the individual can perform the essential functions of the job . . . . Second, *if* (*but only if*) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable her to perform those functions." *Mason*, 357 F.3d at 1116 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003) and citing 42 U.S.C. § 12111(8)). Mr. Pace bears the burden of showing that he is a "qualified individual" under the ADA. *See Johnson v. City of Midwest City*, 166 F.3d 1221, 1999 WL 11312, at *2 (10th Cir. 1999) (unpublished table decision) (citing *White*, 45 F.3d at 361); *Mason*, 357 F.3d at 1119. If Mr. Pace cannot perform the essential functions of the job, then he must come forward with sufficient evidence that reasonable accommodation by the Town is possible. *See Johnson*, at *2 (citing *White*, 45 F.3d at 361).

The Town argues that Mr. Pace cannot establish that he is a "qualified individual" under the ADA because, with or without reasonable accommodation, he cannot perform the "essential functions" of the job he held or desired. The Town points to the regulations which define "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Essential functions of a job are those that 'bear more than a marginal relationship to the job at issue'" and courts place "considerable weight on an employer's judgment concerning a particular job's 'essential' functions." *Kilcrease v.*

9

*Domenico Transp. Co.*, 828 F.3d 1214, 1221-22 (10th Cir. 2016) (quoting *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 887, 888 (10th Cir. 2015)); *Mason*, 357 F.3d at 1119 (when it comes to the question of "essential functions," the inquiry is not intended to second guess the employer or require the employer to lower its standards). The Town also emphasizes that in the ADA's definition of "qualified individual," it is noted that "[f]or the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). (I note that the written description of the Equipment Operator/Laborer position referred to by the Town in its Motion is not itself in evidence, though it is referred to as being attached to the Town's October 30, 2017 letter to Mr. Pace. [Doc #28-10] I also note that there is no evidence as to when or why the written job description was created. Therefore, while I give fair weight and consideration to the Town's judgment regarding the essential functions of the job, I do not consider the alleged written description itself as evidence of the essential functions of the job.)

The Town argues that with a permanent five-pound restriction on lifting, carrying, pushing and pulling activities with his left shoulder and a twenty-pound restriction with his right shoulder, Mr. Pace cannot establish that he could perform the essential functions of the job. The Town points to Mr. Pace's deposition testimony wherein he admits that he could not perform his job duties with his physical restrictions. Pace Dep. 196:22-25, 197:14-19, 202:12-15 [Doc #28-3]; Ex. I (letter from Mr. Pace to Mr. Knight) [Doc #28-9]. In addition, the Town notes, and Mr. Pace admits, that Mr. Knight had Mr. Loberg perform an analysis, referred to above, to determine whether Mr. Pace could perform the essential functions of the job. Loberg Dep. 23:1-24:2. [Doc #28-4] The Town

also points to evidence that Mr. Loberg assisted Mr. Knight in determining the number of hours of work that Mr. Pace could perform with his lifting restrictions, principally based on Mr. Loberg's research and that Mr. Knight indicated in a letter to Mr. Pace that there were only 1,395 hours of work that Mr. Pace could perform, with or without a reasonable accommodation, falling well short of the 2,080 hours of work necessary for the full-time Equipment Operator/Laborer position. Loberg Dep. 53:1-54:2 [Doc #28-4]; Pace Dep. 219:5-21 [Doc #28-3]; Ex. Q (December 11, 2017 letter from the Town to Mr. Pace) [Doc #28-17]. There is also evidence that the Town concluded that due to his restrictions, Mr. Pace could not perform the essential duties of his job, that the Town could not support the modifications that would have been required based on his restrictions, and that the Town was too small to create another position for Mr. Pace. Ferguson Dep. 16:19-17:4. [Doc # 28-16]

In his Response, Mr. Pace claims that he was a "qualified individual" under the ADA. In support, he first argues that in 2015 and 2016 he was performing the essential elements of his job without reasonable accommodations (though he admits that in doing so he was exceeding his physician-imposed work restrictions). Resp. at 10, citing Loberg Dep. 36:19-39:2; 41:19-44:3. [Doc #33-10] He adds that "[i]t stands to reason that if Mr. Pace was able to perform duties such as lifting garbage containers and ram boards, and pushing, pulling, and carrying other items and materials that exceeded his work restrictions, then he was performing the essential functions of his job without reasonable accommodations." Resp. at 10. Mr. Pace goes on to argue that subsequently (after his two shoulder surgeries), he "asked [the Town] for nothing more than an opportunity to do the same thing – to be allowed to find out what his true limitations were, and to do what he could to keep his job." *Id*.

11

While it is unclear why Mr. Pace refers to events that occurred in 2015 and 2016, evidence that he was performing the essential elements of his job without reasonable accommodations during that time period does not further his discrimination claim. For one, a discrimination claim in this case based on actions that occurred in 2015 and 2016 would be time-barred. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1), and holding that the ADA requires that a plaintiff file a charge of discrimination with the EEOC no later than 300 days after the alleged unlawful employment practice occurred); *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (stating that any acts of alleged discrimination or retaliation occurring before the 300–day statutory time period are time-barred). Mr. Pace filed his charge of discrimination with the EEOC on September 10, 2018; therefore, claims based on acts of alleged discrimination that occurred before November 14, 2017 are time-barred. In addition, evidence that Mr. Pace was performing the essential elements of his job without reasonable accommodation in 2015 and 2016 does not establish that Mr. Pace was "qualified" during the actionable time period, i.e. after November 14, 2017.

As to Mr. Pace's evidence that he asked the Town "for nothing more than an opportunity to do the same thing – to be allowed to find out what his true limitations were, and to do what he could to keep his job" does not demonstrate for purposes of this Motion that Mr. Pace could perform the essential functions of the job, with or without reasonable accommodation. To the contrary, Mr. Pace has all but admitted that with a five-pound limitation on his left shoulder and a twenty-pound limitation on his right, he was unable to perform essential elements of his job during the actionable time period, and he has failed to rebut the Town's evidence on this point. *See* Resp. at 4-5 (admitting Statement of Undisputed Material Fact ("SUMF") Nos. 11-13, 16, 22, 28, 31).

Having failed to demonstrate that he could perform the essential functions of the job, it is incumbent on Mr. Pace to come forward with evidence that reasonable accommodation was possible. *See Johnson*, 1999 WL 11312, at *2. On this point, too, Mr. Pace fails because he offers nothing in his Response, other than conclusory allegations, to demonstrate that a reasonable accommodation could have been made and he provides no evidence rebutting the Town's evidence there was no reasonable accommodation they could have made. Mr. Pace admits that the accommodations he proposed in his November 28, 2017 letter to the Town "consisted of essentially removing all lifting and physical labor from the job duties of the Equipment Operator/Laborer position, providing an assistant to help with any manual labor tasks, and assigning him solely to the operation of vehicles with power steering which was sufficient to comply with the five-pound permanent restriction." *See* Resp. at 5 (admitting SUMF No. 31); Ex. M (Plaintiff's Nov. 28, 2017 letter) [Doc #28-13]. The Town also notes (and Mr. Pace does not rebut) that, as developed through discovery, Mr. Pace's proposed accommodation is to not have to perform essentially any manual labor and to have others assist him with his job responsibilities that he can only partially perform.

I conclude that Mr. Pace has not shown that he could perform the essential functions of the job during the relevant time period and that what he proposes as accommodation is not reasonable for the Town. *See Johnson*, 1999 WL 11312, at *2 (reapportioning lifting responsibilities to other crew members held not a reasonable accommodation as a matter of law). "An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995); *Mason*, 357 F.3d at 1122 ("an employee's request to be relieved from an essential function of her position is not, as a matter of

law, a reasonable or even plausible accommodation"). Therefore, I conclude that Mr. Pace has failed to establish the second element of his prima facie case for discrimination. While this conclusion alone is sufficient to grant the Town's Motion as to the discrimination claims, I will address the Town's additional grounds for dismissing Mr. Pace's discrimination claims.

      3.   Whether the Town Discriminated Against Mr. Pace Based on his Disability

The Town argues that Mr. Pace cannot prevail on his claim of discrimination because he has failed to present any evidence to support the third element of his prima facie case – that he was discriminated against because of his disability. The Town points out that, to the contrary, Mr. Pace admits that Mr. Knight, the individual responsible for the termination decision, never exhibited any discriminatory animus toward him. *See* Resp. at 5-6 (admitting SUMF Nos. 40-44). As to Mr. Pace's allegations that his hours were reduced in 2017 because of discrimination based on his injuries, the Town denies that there was any retaliatory motive and asserts that his reduced hours were the result of Mr. Pace's physicians restricting him from working and the fact that Mr. Pace was not working while he was recovering from surgery. Mot. at 17, citing Pace Dep. 131:19-132:5, 144:8-13. [Doc #28-3]

In response, Mr. Pace argues that he "alleges a number of incidents wherein the Town's then-Administrator, Jane Berry, discriminated against him because of his injuries. Specifically Mr. Pace alleges that Ms. Berry complained about his 'slow recovery,' and altered his timecards without conferring with him, denying him overtime pay and exhausting his vacation, personal, sick and compensation time." Resp. at 11, citing Ex. 2 (undated letter from Mr. Pace to the Town) [Doc 33-2] & Ex. 3 (Aff. of Eric Pace) [Doc #33-3]. Mr. Pace also points to his July 11, 2016 complaint letter to the Town which he claims contains "several allegations of discriminatory

14

conduct on the part of Jane Berry, Travis Loberg, and others at the Town" and that many of these allegations are also pled in Mr. Pace's Complaint filed in this action. Resp. at 11. Mr. Pace contends that these allegations are questions for the trier of fact and that they are clearly in dispute. *Id*.

To show that he was terminated or given reduced hours because of his disability, Mr. Pace must present some affirmative evidence that his disability was a determining factor in the Town's decision. *Morgan*, 108 F.3d at 1323. Therefore, Mr. Pace must prove that the Town acted with a "discriminatory animus" against him based on his disability. *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020). Even assuming Mr. Pace's circumstantial (and rather tenuous) evidence suggests that he was discriminated against because of his disability, his discrimination claims cannot survive because he utterly fails to satisfy his burden in the next step of the *McDonnell Douglas* analysis, i.e., to demonstrate a genuine issue of material fact that the Town's proffered non-discriminatory reasons for taking adverse employment actions against Mr. Pace are pretextual.

The Town's evidence firmly establishes that Mr. Pace's hours were reduced in 2017 and that he was later terminated because of his injuries and physical restrictions, because he could not perform the essential duties of his job with his restrictions and because the Town staff was unable and too small to reasonably accommodate him. Since Mr. Pace fails to present <u>any</u> evidence of "such weaknesses, implausibilities, incoherencies, or contradictions" in the Town's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of belief and hence infer that the Town did not act for the asserted non-discriminatory reasons, he cannot defeat summary judgment. *See Morgan*, 108 F.3d at 1323 (describing the ways in which pretext can be shown and stating that "mere conjecture that the employer's explanation is a pretext

for intentional discrimination is an insufficient basis for denial of summary judgment") (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988))).

For these reasons, I conclude that Mr. Pace has not established either his claim for discrimination under the ADA or his claim under the Rehabilitation Act.

B.  Plaintiff's Claim for Failure to Accommodate under the ADA

"An employer violates the ADA by failing to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability, unless such accommodation would pose an undue hardship on the employer." *Edmonds-Radford v. Southwest Airlines Co.*, 17 F.4th 975, 992 (10th Cir. 2021). In order to establish a prima facie case for failure to accommodate under the ADA, the employee must demonstrate that: (1) he is disabled; (2) he is otherwise qualified; and (3) he requested a plausibly reasonable accommodation. *Id*. Unlike a claim for discrimination, a failure to accommodate claim "does not require proof of a discriminatory animus – any failure to provide reasonable accommodations to an otherwise qualified individual will be sufficient." *Id*.

The Town, focusing on the third element, argues that, as developed through discovery, Mr. Pace's proposed accommodation (to not have to perform essentially any manual labor and to have others assist him with his job responsibilities that he can only partially perform) is not viable or required under the ADA. The Town also notes in its Reply that Mr. Pace admitted all of the material facts about the Town's efforts to determine what duties he could perform based on his lifting restrictions, after which the Town concluded that he could not perform the essential functions of the job and that the Town could not accommodate him. *See* Resp. at 5 (admitting SUMF Nos. 31, 34-38).

16

In his Response, Mr. Pace makes no attempt to demonstrate that his proposed accommodation was plausible or reasonable. Nor does he address the Town's argument or its evidence indicating that he was terminated because his disabilities could not be reasonably accommodated. Instead, the entirety of the substantive portion of Mr. Pace's response regarding this claim consists of the following:

> However, it is clear form [sic] the record that Mr. Pace's direct supervisors were aware of his physician-imposed restrictions following the injuries he sustained on November 5, 2015, and February 5, 2016. It is also undisputed that Mr. Pace continued to be assigned duties that exceeded those restrictions. The law imposes a duty on a plaintiff in Mr. Pace's position to plead that "despite knowing of [his] disability [the employer] did not reasonably accommodate it." *See Hines v. Bos. Pub. Sch.*, 264 F. Supp. 3d 329, 334 (D. Mass. 2017). Here, aside from referencing his termination, Mr. Pace made the requisite allegations no fewer than six (6) times in his Complaint. *See* Ex. 3, ¶ 6. These are genuine issues of material fact that cannot be summarily disposed of.

Resp. at 14. Not only does this argument address acts that occurred in 2015 and 2016, which, as noted above, are time-barred, but it also relies on the pleading standard of Rule 12(b)(6), rather than the relevant and more exacting summary judgment standard. *See* Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248 (the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment). The case relied on by Mr. Pace, *Hines v. Boston Pub. Sch.*, 264 F. Supp.3d 329 (D. Mass. 2017), involved an employer's motion to dismiss under Rule 12(b)(6) for failure to state a claim, not, as here, a motion for summary judgment.

Based on the lack of a meaningful response and because Mr. Pace has not demonstrated that he requested a plausibly reasonable accommodation, I grant the Town's Motion on Mr. Pace's failure to accommodate claim.

### C. Plaintiff's Claim for Retaliation under the ADA

To establish a prima facie case of retaliation under the ADA, the plaintiff must show: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Morgan*, 108 F.3d at 1324. Mr. Pace alleges two adverse employment actions: first, that he got only 49 hours of work in 2017 allegedly in retaliation for filing workers' compensation claims, and second, that he was terminated allegedly in retaliation for requesting accommodations for his physical restrictions.

The Town argues that Mr. Pace cannot establish a prima facie case because he cannot demonstrate that the two adverse employment actions were based on retaliation. As to the first alleged adverse employment action, the Town argues that the evidence is undisputed that there was no retaliatory motive behind its actions and that the reduction in Mr. Pace's hours was the result of Mr. Pace's physicians restricting him from working and Mr. Pace not working while he was recovering from surgery. Mot. at 17, citing Pace Dep. 131:19-132:5, 144:8-13. [Doc # 28-3] As to Mr. Pace's second allegation, the Town asserts that the undisputed evidence demonstrates that there is no causal connection between any protected activity and Mr. Pace's termination, citing multiple measures (described herein, and admitted by Mr. Pace) the Town took to determine whether it could reasonably accommodate Mr. Pace, and that it terminated Mr. Pace based on its investigation and its conclusion that it could not reasonably accommodate him due to his inability to perform the essential functions of the job. Alternatively, the Town asserts that even assuming Mr. Pace could establish a prima facie case of retaliation, he has not presented any evidence that the Town's legitimate non-retaliatory reasons for its employment decision were pretextual.

Mr. Pace argues in response that he has established a prima facie case of retaliation. He asserts that he engaged in protected activity by making a complaint to the Town in a letter dated July 11, 2016 [Doc #33-4] in which he alleged discriminatory conduct on the part of his supervisors, including Ms. Berry, following his job-related injuries. He further alleges that he was denied a review of his complaints by a Personnel Liaison Group (per the Town's policy manual), and instead the Town's Mayor handled the complaints himself. Mr. Pace also asserts that he suffered adverse employment action by being berated for a slow recovery, being forced to engage in work that exceeded the weight restrictions imposed by his physicians and having his timecards altered depriving him of overtime and other benefits, in addition to being terminated.

I will assume, without deciding, that Mr. Pace has established a prima facie case of retaliation and move on to the next steps in the *McDonnell Douglas* analysis. I have already concluded that the Town has presented facially legitimate and non-discriminatory reasons for its adverse employment actions and I conclude that those reasons also appear to be non-retaliatory. Therefore, the burden shifts to Mr. Pace to show, with evidence of "such weaknesses, implausibilities, incoherencies, or contradictions" in the Town's proffered reasons, that a reasonable factfinder could rationally find them unworthy of belief. *Morgan*, 108 F.3d at 1323. As noted above, Mr. Pace has offered <u>no</u> evidence even addressing the Town's proffered reasons, much less evidence that those reasons are unworthy of belief. Accordingly, summary judgment on Mr. Pace's retaliation claim is appropriate.

## IV. CONCLUSION

For the reasons stated above, it is HEREBY ORDERED that the Town's Motion for Summary Judgment [Doc #28] is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE, costs to be awarded to Defendant.

DATED: December 29, 2021 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE